IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

CONNIE SANCHEZ and GLENDA MCNAIR,

    Plaintiffs,

v.                           CV 416-225

ST. JOSEPH'S/CANDLER HEALTH SYSTEM, INC.,

    Defendant.

**ORDER**

Before the Court is Defendant's motion for summary judgment (doc. 31). The Clerk has given Plaintiffs notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied.

**I. BACKGROUND**

Plaintiffs Connie Sanchez and Glenda McNair were employed by Defendant as Team Leads for the Patient Registration Department at St. Joseph's Hospital and Candler Health Center, respectively. (Sanchez Dep., Doc. 31-3, at 75; McNair Dep., Doc. 31-4, at 42.) As team leads, Plaintiffs oversaw forty-two

registration specialists ("registrars"). (Sanchez Dep. at 75.) Registrars are in charge of collecting demographic,[1] medical, billing, and insurance information from patients. (Id. at 86-88; McNair Dep. at 43-44.) This information was used to provide medical care and for billing purposes. (Sanchez Dep. at 86-88; McNair Dep. at 43-44.)

Plaintiffs' duties included: (1) helping register patients during busy periods; (2) delivering money collected from various departments to the campuses' cashier; (3) confirming that the money collected matched what each department reported; (4) ensuring each department had a sufficient number of registrars; (5) calling IT when the registration department experienced computer problems; (6) ordering supplies; and (7) learning the hospital's new billing software. (Sanchez Dep. at 104-05.) The parties agree that Plaintiffs' most important duty was ensuring each department had a sufficient number of registrars. (Id. at 118-19; McNair Dep. at 92.) This involved Plaintiffs calling registrars to fill empty shifts and rotating patients from one department to another when a department was short-handed.[2] (Sanchez Dep. at 100; McNair Dep. at 83, 115.) According to

---

[1] Demographic information includes the patient's name, address, family, and employer. (Sanchez Dep. at 86.)
[2] Although Plaintiffs responded to staff shortages, they had no control over the schedule. Kelly Allen, the patient registration department manager, was responsible for scheduling employees. (Sanchez Dep. at 224; McNair Dep. at 54-55.)

2

Defendant, Plaintiffs had power to move employees from one department to another depending on the amount of traffic in each department. (McNair Dep. at 46, 83.) However, Ms. Allen testified that Plaintiffs' decision was based on a defined number of registrars that were supposed to be in each department. (Allen Dep., Doc. 31-17, at 18-19.)

When a registrar called in sick or there was an opening in the schedule, Plaintiffs called through a list of all forty Registrars to find a replacement. (McNair Dep. at 56.) Plaintiffs would choose whom to call first based on who they thought was most likely to agree to cover that shift. (Sanchez Dep. at 174; McNair Dep. at 162-63.) The decision to cover a shift was voluntary and registrars would frequently refuse. (Sanchez Decl., Doc. 35-8, ¶ 4; McNair Decl., Doc. 35-9, ¶ 4.) Additionally, Plaintiffs had no authority to decide a replacement was unnecessary. (McNair Dep. at 160.) Therefore, finding someone to fill an empty shift could take hours. (Id. at 57.) This duty took up much of Plaintiffs' workday and an additional fourteen hours on-call each week. (Sanchez Dep. at 118, 248; McNair Dep. at 114.)

Plaintiffs are no longer working for Defendant. Ms. McNair quit on August 8, 2014, and Ms. Sanchez was fired on March 11, 2015. (Sanchez Dep. at 222; McNair Dep. at 102.) On August 16,

3

2016, Plaintiffs initiated this action alleging that Defendant failed to pay overtime as mandated by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Defendant now moves for summary judgment arguing that Plaintiffs are exempt from the FLSA's overtime requirement.

## II. LEGAL STANDARD

A motion for summary judgment will be granted if there is no disputed material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Facts are material if they could affect the results of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view facts in the light most favorable to the non-moving party and draw all inferences in its favor. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The movant initially bears the burden of proof and must demonstrate the absence of a disputed material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must also show no reasonable jury could find for the non-moving party on any of the essential elements. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

If the movant carries its burden, the non-moving party must come forward with significant, probative evidence showing there is a material fact in dispute. Id. at 1116. The non-movant

must respond with affidavits or other forms of evidence provided by Federal Rule of Civil Procedure 56. Id. at 1116 n.3. The non-movant cannot survive summary judgment by relying on its pleadings or conclusory statements. Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). After the non-movant has met this burden, summary judgment is granted only if "the combined body of evidence is still such that the movant would be entitled to a directed verdict at trial - that is, such that no reasonable jury could find for the non-movant." Fitzpatrick, 2 F.3d at 1116.

### III. DISCUSSION

Defendant moves for summary judgment arguing that because Plaintiffs fall under both the executive and administrative exemption, they are not entitled to overtime.

The FLSA was designed to introduce labor standards to eliminate working conditions that threaten the "minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). Under the FLSA, an employee engaged in "commerce or the production of commerce" must be paid time and a half if she works over forty hours a week. 29 U.S.C. § 207(a)(1). However, the law does not apply to workers "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

5

Exemptions under the FLSA are narrowly construed against the employer. Walters v. Am. Coach Lines of Miami, Inc., 575 F.3d 1221, 1226 (11th Cir. 2009); Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1269 (11th Cir. 2008) ("[T]he exemption is to be applied only to those clearly and unmistakably within the terms and spirit of the exemption." (internal quotation mark omitted)). Furthermore, the employer bears the burden of proving the applicability of an exemption and must do so by presenting "'clear and affirmative evidence.'" Birdwell v. City of Gadsen, Ala., 970 F.2d 802, 805 (11th Cir. 1992) (quoting Donovan v. United Video, Inc., 725 F.2d 577, 581 (10th Cir. 1984).

## A. The Executive Exemption

Under the Department of Labor ("DOL") regulations, an employee falls within the executive exemption when (1) she is paid more than $455 a week; (2) her primary duty is management of the enterprise in which she is employed; (3) she regularly directs two or more employees; and (4) she has the authority to hire or fire other employees or her recommendation regarding the status of such employees is given particular weight. 29 C.F.R. § 541.100(a). The parties agree that Plaintiffs were paid more than $455 a week; the last three elements are in dispute.

Determining whether an employee's primary duty is management is "an inherently fact-based inquiry." Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1263 (11th Cir. 2008). Management includes:

> [I]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

The parties agree that Plaintiffs' primary duty was ensuring an adequate number of registrars for each department by calling registrars to cover empty shifts and rotating registrars between departments.[3] However, Plaintiffs maintain that asking

---
[3] Both executive and administrative exemptions focus on the employee's primary duty. 29 C.F.R. §§ 541.100(a) & 541.200(a). Courts only consider an employee's "job as a whole" when trying to identify what that primary duty is. 29 C.F.R. § 541.700(a). Since the parties agree, and the evidence shows that Plaintiffs' primary duty was to ensure adequate staff coverage,

7

employees to fill empty shifts is not a management function because the decision to come in was voluntary and Plaintiffs could not decide whether coverage was necessary. In Ale v. Tennessee Valley Auth., 269 F.3d 680, 683-84 (6th Cir. 2001), the court found that shift supervisors who were seeking overtime pay were not executive employees. The court reasoned that "[a]lthough shift supervisors did spend some of their time supervising employees, this supervision was not managerial in nature because they had no control over the people they supervised." Id. at 691. Like the shift supervisors in Ale, Plaintiffs lacked the managerial control attendant to the duties listed in 29 C.F.R. § 541.102. See id. ("[T]he shift supervisors' primary responsibility was performing clerical duties such as calling people to come to work."). While that list is not exhaustive, Defendant has not shown that asking an employee to voluntarily cover an open shift is a management function.

Defendant also fails to demonstrate that Plaintiffs acted as managers when they moved registrars between departments. Defendant claims that Plaintiffs decided when a department was too busy and needed additional registrars from another department. Defendant insists that by controlling when registrars were moved to different departments, Plaintiffs

---

Plaintiffs' other duties are of little significance to the executive and administrative exemption analysis.

8

apportioned their work. However, Ms. Allen, the registration department manager, testified that each department had a set number of registrars and that Plaintiffs rotated employees based on that number. (Allen Dep. at 18-19.) Construing the facts in their favor, Plaintiffs only transferred a registrar when the number of registrars in another department fell below the prescribed amount. While the presence of such a guideline does not preclude finding management, nothing in the residual power left to Plaintiffs is sufficient to justify an exemption. Plaintiffs are not like the employees in Donovan v. Burger King Corp., 675 F.2d 516, 521-22 (2d Cir. 1982). In Donovan, the court found that, despite the presence of detailed guidelines, the assistant manager still had to make significant judgment calls like scheduling employees and ordering supplies. Id. at 522. Defendant has not shown that deciding which registrar to send to an understaffed department would have a similar impact on the hospital. Simply put, Plaintiffs' authority to rotate registrars, without more, does not mandate the imposition of the executive exemption as a matter of law.

Defendant has failed to show that Plaintiffs' primary duty of ensuring adequate coverage involved management. Accordingly, summary judgment is not justified under the executive exemption.

9

## B. The Administrative Exemption

Defendant contends that if Plaintiffs are not executive employees, summary judgment is still warranted under the administrative exemption. An administrative employee must: (1) earn at least $455 a week; (2) have a primary duty that involves the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) have primary duties that include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). Plaintiffs concede their salary was greater than $455 per week; Defendant must establish the second and third elements.

Assuming *arguendo* that Plaintiffs' primary duty was directly related to management, Defendant still fails to establish that duty "include[d] the exercise of discretion and independent judgment with respect to matters of significance." See 29 C.F.R. 541.200(a). Exercising discretion and independent judgment involves the "comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Courts consider factors such as:

> [W]hether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major

>assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). An employee can exercise discretion and independent judgment even when their decisions are subject to review by a supervisor. 28 C.F.R. § 541.202(c). Moreover, the end result of discretion and independent judgment might only be a recommendation for action. Id. However, the employee's actions must be more than using skill to apply "well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e).

Defendant argues that because Plaintiffs chose which replacement registrar to call first, they exercised discretion and independent judgment with respect to matters of significance. Deciding which registrar to call first to cover

11

an empty shift or move to another department does not satisfy any of the factors listed in 29 C.F.R. § 541.202(b). Although that list is not exhaustive, Defendant has not demonstrated how Plaintiffs' decisions had a significant impact on the hospital. Additionally, Plaintiffs' decisions did not involve "the comparison and the evaluation of possible courses of conduct." See 29 C.F.R. § 541.202(a). Indeed, Plaintiffs lacked the power to decide whether a replacement was even necessary. (McNair Dep. at 160.)

Defendant's reliance on Rock v. Ray Anthony Int'l, LLC, 380 F. App'x 875 (11th Cir. 2010), is unpersuasive. In Rock, the plaintiff's primary duty included choosing the appropriate worker and equipment for a particular job and deciding how best to handle an emergency to ensure that the customer's needs were met. The plaintiff decided which employee to assign to a particular job based on that employee's performance and reliability. The court decided that those decisions involved exercising discretion and independent judgment. Id. at 879. Here, when deciding which employee to call first to cover an open shift, Plaintiffs' only consideration was which registrar was most likely to agree to come in on her day off. (McNair Dep. at 57.) Furthermore, Defendant has not shown that Plaintiffs considered registrars' performance or reliability when rotating them to a different department. Unlike Rock, Plaintiffs did not

match the registrar's skill sets with the hospital's needs. (Id.) Because Plaintiffs did not engage in that kind of customized decision making, their duties were no more than using "skill in applying well-established techniques," which does not qualify as discretion and independent judgment. See 29 C.F.R. § 541.202(e).

Defendant has failed to show that Plaintiffs' primary duty involved exercising discretion and independent judgment with respect to matters of significance. Accordingly, Defendant has failed to carry its burden of proving, by clear and affirmative evidence, that the administrative exemption applies.

## IV. CONCLUSION

Upon the foregoing and in due consideration, Defendant's motion for summary judgment (doc. 31) is **DENIED**. This case will proceed to trial.

**ORDER ENTERED** at Augusta, Georgia, this 16th day of March, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA